UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO CORTEZ RODRIGUEZ,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY, *et al.*,<br><br>Respondents. | Case No.  1:26-cv-02510-JLT-CDB (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS<br><br>(A Number: A-094-373-394)<br><br>(Doc. 1)<br><br>**7-Day Objection Period** |

Petitioner Eduardo Cortez Rodriguez ("Petitioner"), a federal immigration detainee proceeding pro se and *in forma pauperis*, initiated this action on April 2, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241, while in custody of Immigration and Customs Enforcement ("ICE") at the California City Detention Facility.  (Doc. 1).

Respondents are the unnamed Warden of the California City Detention Facility; Sergio Albarran, San Francisco ICE Field Office Director, Kristi Noem, Secretary of the Department of Homeland Security ("DHS"); Todd M. Lyons, Acting Director of ICE; and Pamela Bondi, Attorney General of the United States. *Id.* at 1.

On April 13, 2026, Respondents filed a response to the petition.  (Doc. 9).  Petitioner thereafter filed a reply.  (Doc. 10).  For the reasons set forth herein, the undersigned recommends that Petitioner's petition for writ of habeas corpus be GRANTED.

**I.      Relevant Background**

Petitioner is a native and citizen of Mexico.  (Doc. 9 at 1); *see id* at 34 (April 18, 2024, Form I-213 Record of Deportable/Inadmissible Alien ("Ex. 7")).  Petitioner was ordered removed from the United States on June 10, 2009, and was removed to Mexico that same day.  *Id.* at 1-2. Petitioner unlawfully reentered the United States and was again removed to Mexico under a reinstatement of a prior removal order on November 4, 2009.  *Id.* at 34.  At some time thereafter, Petitioner unlawfully reentered the United States.  He ultimately was apprehended by immigration officials (ICE) on April 18, 2024, detained in immigration custody, and was placed in removal proceedings pursuant to section 240 of the Immigration and Nationality Act ("INA").  *Id.* at 39 (April 18, 2024, Notice to Appear ("Ex. 9")).  DHS reports reflect that Petitioner was targeted for apprehension based on his numerous criminal convictions (*id.* Ex. 7) and his Notice of Custody Determination asserts that his detention by immigration authorities was pursuant to 8 U.S.C. § 1226.  *Id.* at 37 (April 18, 2024, Notice of Custody Determination ("Ex. 8")).

On February 5, 2025, an immigration judge denied Petitioner's applications for relief based on asylum, withholding of removal, and deferral of removal and ordered Petitioner removed to Mexico.  *Id.* at 43-46 (February 5, 2025, Order of Immigration Judge ("Ex. 10")).  Petitioner appealed and on June 30, 2025, the Board of Immigration Appeals ("BIA") dismissed the appeal. That same day, Petitioner filed a petition for review before the United States Court of Appeals for the Ninth Circuit.  *Id.* at 48.  The undersigned takes judicial notice that Petitioner's petition for review remains pending before the Ninth Circuit and that oral argument was submitted on August 11, 2026.[1]  *See Cortes Rodriguez v. Blanche*, 25-4049 (9th Cir. June 30, 2025), Doc. 41.

On numerous occasions between January 2008 and March 2023, Petitioner sustained criminal convictions, including for second-degree burglary (on January 29, 2008, and a separate conviction on March 22, 2023), reckless driving and taking a vehicle without owner's consent (on February 3, 2009, and a separate conviction on April 21, 2009), and a felon in possession of a

_____

[1] The Court may take judicial notice of court records.  *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

firearm (on March 3, 2009, and a separate conviction on March 22, 2023).  (Doc. 9 at 32, 34).

The undersigned takes judicial notice that Petitioner has no upcoming hearings and the EOIR's automated case database reflects Petitioner's was ordered removed on February 5, 2025, and that the BIA case appeal was dismissed on June 30, 2025.[2]

## II.    Governing Authority

### A.    The Writ of Habeas Corpus

Writ of habeas corpus relief extends to a person in custody under the authority of the United States.  *See* 28 U.S.C. § 2241.  A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."  28 U.S.C. § 2243.

Relevant here, "in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court" pursuant to 28 U.S.C. § 2241 where the petitioner "challenges his confinement on statutory and constitutional grounds." *Nadaraja v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006); accord *Flores-Torres v. Mukasey*, 548 F.3d 708, 713 (9th Cir. 2008) (holding "the district court has jurisdiction over Torres's habeas petition challenging his detention" in ICE custody).

### B.    Statutory Immigration Framework (8 U.S.C. § 1225 and § 1226)

Two statutes govern the detention and removal of inadmissible noncitizens from the United States: 8 U.S.C. § 1226 and § 1225.  Relevant here is the legal background presented by the district court in *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503 (N.D. Cal. Sept 12, 2025), which the undersigned adopts herein:

///

---

[2] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited August 12, 2026, using Petitioner's A-Number and nationality); *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities ... and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [ ] therein."); *Argueta v. Walgreens Co.*, 760 F. Supp. 3d 1028, 1034 (E.D. Cal. 2024) (taking judicial notice of information on federal government agency's website).

1.     **Full Removal Proceedings and Discretionary Detention (§ 1226)**

The "usual removal process" involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section § 1226 provides that while removal proceedings are pending, a noncitizen "may be arrested and detained" and that the government "may release the alien on ... conditional parole." § 1226(a)(2); *accord Thuraissigiam*, 591 U.S. at 108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country"). When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). A noncitizen will be released if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* (citing 8 C.F.R. § 236.1(c)(8)).

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates by the preponderance of the evidence that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his or his release. *Diaz*, 53 F.4th at 1197 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Once released, the noncitizen's bond is subject to revocation. Under 8 U.S.C. § 1226(b), "the DHS has authority to revoke a noncitizen's bond or parole 'at any time,' even if that individual has previously been released." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019). However, if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstances before re-arrest. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017).

2.     **Expedited Removal and Mandatory Detention (§ 1225)**

While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," a process that provides for expedited removal. *Jennings*, 583 U.S. at 303 (2018). Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C. § 1225(a)(1). For certain applicants for admission, 8 U.S.C. § 1225 authorizes "expedited removal." § 1225(b)(1). § 1225(b)(1) provides

that:

> "If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution."

Sections 8 U.S.C. § 1182(a)(6)(C) and 1182(a)(7) respectively refer to noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. Clause (iii) of § 1225(b)(1) allows the Attorney General (who has since delegated the responsibility to the Department of Homeland Security Secretary) to designate for expedited removal noncitizens "who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." § 1225(b)(1)(A)(iii)(II).

To summarize, under § 1225(b)(1), two groups of noncitizens are subject to expedited removal. First, there are "arriving" noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. The implementing agency regulations define "arriving alien" as applicants for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The second group –designated noncitizens –includes noncitizens who meet all of the following criteria: (1) they are inadmissible due to lack of a valid entry document or misrepresentation; (2) they have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) they are among those whom the Secretary of Homeland Security has designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109; § 1225(b)(1).

"Initially, DHS's predecessor agency did not make any designation [under (3)], thereby limiting expedited removal only to 'arriving aliens,'" that is, noncitizens encountered at ports of entry. *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 U.S. Dist. LEXIS 169432, at *14 (D.D.C. Aug. 29, 2025). In the following years, DHS extended by designation expedited removal to noncitizens who arrive by sea and who have been present for fewer than two years, and to noncitizens apprehended within 100 air miles of any U.S. international land border who entered within the last 14 days. *Id.* This was the status quo until January 2025, when the Department of Homeland Security revised its § 1225 designation to "apply expedited removal to the fullest extent authorized by statute." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan.

24, 2025). Under this designation, expedited removal applies to noncitizens encountered *anywhere* within the United States, who have been in the United States for less than two years and are inadmissible for lack of valid documentation or misrepresentation. In short, expedited removal was expanded to apply for the first time to vast numbers of noncitizens present in the interior of the United States.

Under the expedited removal statute § 1225(b)(1), if an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." §§ 1225(b)(1)(A)(i)–(ii). If the asylum officer determines that the applicant has a "credible fear," the applicant "receive[s] 'full consideration' of his asylum claim in a standard removal hearing." *Thuraissigiam*, 591 U.S. at 110. If the officer determines there is no "credible fear," the officer "shall order the alien removed from the United States without further hearing or review." § 1225(b)(1)(B)(iii). However, the officer's decision may be appealed by the applicant to an immigration judge, who must conduct the review "to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination." *Id.* Detention under § 1225(b)(1) is "mandatory" "pending a final determination of credible fear of persecution and if found not to have such a fear, until removed." *Id.* (citing § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.")

[Section] 1225 also contains a provision that applies to applicants for admission not covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. This provision, 1225(b)(2), states that, subject to statutory exceptions, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [full removal proceedings] of this title." § 1225(b)(2). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their full removal proceedings are pending. This is in contrast to the default detention regime under § 1226(a), which allows for discretionary release and review of detention through a bond hearing.

### 3.     The Government's Recent Change in Position

Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation. This practice was codified by regulation. The regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") state that "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In fact, the government has conceded in other

contexts that "DHS's long-standing interpretation has been that 1226(a) [discretionary detention] applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended." Dkt. No. 17 (citing Solicitor General, Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)) . . .

In 2025, however, the Government's policy changed dramatically. The DHS revised its § 1225 designation to "apply expedited removal *to the fullest extent authorized by statute.*" Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) (emphasis added). The Secretary of Homeland Security memorandum directed federal immigration officers to "consider ... whether to apply expedited removal" to "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied." Dkt. No. 1 at ¶ 33. Officers are encouraged to "take steps to terminate any ongoing removal proceeding and/or any active parole status." *Id.* The memorandum states that DHS shall take the actions contemplated by the memorandum "in a manner that takes account of legitimate reliance interests," but states that "the expedited removal process includes asylum screening, which is sufficient to protect the reliance interests of any alien who has applied for asylum or planned to do so in a timely manner." Huffman Memorandum (Jan. 23, 2025).

Since mid-May of 2025, the Department of Homeland Security has made a practice of appearing at regular removal proceedings in immigration court, moving to dismiss the proceedings, and then re-arresting the individual in order to place them in expedited removal proceedings. Dkt. No. 1 at ¶¶ 35–40. If the immigration judge does not dismiss the full removal proceedings, ICE still makes an arrest, apparently in reliance on § 1225(b)(2)'s detention provision.

*Salcedo Aceros*, 2025 WL 2637503 at *1-4 (internal footnotes omitted).

## III.   Exhaustion

### A.   Governing Authority

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)).  The Ninth Circuit, however, requires that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)).  "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)).

"Exhaustion can be either statutorily or judicially required.  If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)).  "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived." *Id.* (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

### B. Analysis

Neither Petitioner nor Respondents address the issue of exhaustion.  *See* (Docs. 1, 9).

The undersigned finds that the prudential exhaustion requirement should be waived as it would be futile to seek release by administrative means given Respondents' position that detention is mandatory.  *See* (Doc. 9 at 1) (citing 8 U.S.C. § 1231).

### IV. Discussion

Respondents assert that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1231(a) because he is the subject of a final order of removal.  However, as Respondents concede, Petitioner's final order of removal is pending review by the Ninth Circuit Court of Appeals.  As the presiding district judge in this case previously ruled in a different but similar case, "[a] non-citizen who is seemingly detained under 8 U.S.C. § 1231(a) based on a final order of removal—where administrative review is complete, but removal is stayed by the court of appeals pending review of the case—is treated as if detained under" the statute providing the authority for the noncitizen's *initial* detention by immigration authorities, whether § 1225 or § 1226.  *See Hernandez-Castro v. Lyons*, No. 1:25-CV-01574 JLT SAB, 2025 WL 3771344, at *9 (E.D. Cal. Dec. 31, 2025) (citing *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008)).  "Put differently, when the appellate court issues a stay, the [noncitizen] may not be detained under any subsection of § 1231(a) unless and until the court finally denies the [noncitizen's] petition for review." *Id.* at *10 (citing *Prieto-*

*Romero*, 534 F.3d at 1060).

Accordingly, here, because the statutory authority for the Attorney's General's initial detention of Petitioner was 8 U.S.C. § 1226(c), the undersigned considers the lawfulness of his continued detention under that authority.

**A.     8 U.S.C. § 1226(c)**

8 U.S.C. § 1226(c)(1)(E) provides in relevant part that "[t]he Attorney General shall take into custody any alien who … is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense[.]"  8 U.S.C. § 1226(c)(1)(E). Pursuant to the plain statutory language, a petitioner "need not be convicted of an offense to be subject to mandatory detention under this subsection." *Yaman v. Warden*, No. 1:26-cv-2048-DJC-JDP, 2026 WL 1162729, at *2 (E.D. Cal. Apr. 29, 2026).

The presiding district judge in this case has addressed and applied the holdings of the key Supreme Court and Ninth Circuit rulings applying § 1226 as relevant here, and the undersigned adopts that analysis herein (*see Kakkar v. Chestnut*, No. 1:25-cv-1627-JLT-SAB, 2025 WL 3638298, at *4-5 (E.D. Cal. Dec. 15, 2025)):

> Under this provision, non-citizens may be released "only if the Attorney General decides ... that release ... is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation ... and the alien will not pose a danger to the safety of other[s] ... and is likely to appear for any scheduled proceeding." *Id.* at § 1226(c)(4). Thus, noncitizens detained under this category are not entitled to bond hearings as those detained under § 1226(a) are. *See Jennings v. Rodriguez*, 583 U.S. 281, 303–304 (2018) ("By expressly stating that the covered aliens may be released 'only if' certain conditions are met, § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained aliens under any other conditions.") (emphasis in original).
>
> Section 1226(c)'s mandatory detention requirement applies even if the government does not immediately detain a criminal non-citizen upon immediate release from a correctional facility. *See Nielsen v. Preap*, 586 U.S. 392, 396 (2019) (finding that the Ninth Circuit's interpretation—namely, that criminal aliens not arrested immediately upon release from criminal custody are exempt from §

1226(c)'s mandatory detention and thus entitled to a bond hearing—is wrong). However, the Supreme Court expressly noted that its decision, "on the meaning of that statutory provision[,] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute." *Id*. at 420. Courts routinely review as-applied constitutional challenges to § 1226(c) detention. *See e.g., Perera v. Jennings*, No. 21-cv-04136-BLF, 2021 WL 2400981, at *4 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-cv-01288-CRB, 2023 WL 2744397, at *5 (N.D. Cal. March 31, 2023); *Carballo v. Andrews*, No. 1:25-cv-00978-KES-EPG, 2025 WL 2381464, at *4 (E.D. Cal. Aug. 15, 2025).

The record shows that Petitioner sustained separate convictions for second-degree burglary on January 29, 2008, and on March 22, 2023.  (Doc. 9 at 32, 34, 58-59).  Petitioner's convictions under California Penal Code §§ 459, 460(b) for second-degree burglary clearly implicate the statutory language of section 1226(c)(1)(E).  *See* Cal. Penal Code §§ 459(a), 460(b).

Because the record shows that Petitioner is subject to mandatory detention under § 1226(c) based on his burglary convictions, under the statutory framework above, Petitioner is subject to § 1226(c)(4)'s release provision and therefore is not entitled to bond hearings in the same fashion as those detained under § 1226(a).  Other "courts in this Circuit have declined to find that a petitioner has a due process right to a bond hearing under section 1226(c)." *Yaman*, 2026 WL 1162729, at *2 (citing cases).  And mandatory detention under section 1226(c) does not violate Petitioner's due process rights.  *See Demore v. Kim*, 538 U.S. 510, 531 (2003) (discussing section 1226(c) and finding that "[d]etention during removal proceedings is a constitutionally permissible part of that process").

Notwithstanding the undersigned's finding that Petitioner is subject to mandatory detention under § 1226(c), here, Petitioner raises a due process argument that his "continued detention in ICE custody violates the Due Process Clause of the Fifth Amendment[.]" (Doc. 1 at 14).  As explained in the statutory scheme above, Supreme Court precedent "does not foreclose as-applied challenges … to applications of [§ 1226(c)]." *Preap*, 586 U.S. at 420; *Kakkar*, 2025 WL 3638298 at *5.

Therefore, the undersigned considers Petitioner's as-applied challenge to his re-detention

10

raised in his due process claim.

    **B.**        **Procedural Due Process**

                1.       *Governing Authority*

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'" *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (citing U.S. Const. amend. V). "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth … Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'" *Quintero*, 995 F.3d at 1051-52 (citing *Salerno*, 481 U.S. at 746). "The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'" *Mathews*, 424 U.S. at 902 (citation omitted). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted); *see Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that

11

the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

>                    2.        *Analysis*

On Petitioner's as-applied procedural due process challenge to his continuing detention by immigration authorities, the undersigned considers (1) "whether there exists a protected liberty interest under the Due Process Clause, and … [(2)] the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

"There is … a meaningful distinction between a challenge to an initial period of detention, … and a challenge to *re-detention* after a court has previously granted release on bond pending immigration proceedings." *Carballo v. Andrews, et. al*, No. 1:25-cv-00978-KES-EPG, at 2025 WL 2381464, at *7 (E.D. Cal. Aug. 15, 2025) (emphasis in original). "'[T]he liberty interests of [an individual] who is re-arrested differ from the liberty interests of a detained person.'" *Id.* (*quoting Guillermo M.R. v. Kaiser*, No. 25-cv-05436-RFL, 2025 WL 1810076, at *1 (N.D. Cal. June 30, 2025)). "In the former situation, where ICE detains an individual upon their release from a correctional facility, without any substantial intervening period of release, that individual has no opportunity 'to form the [] enduring attachments of normal life.'" *Id.* (*quoting Morrissey*, 408 U.S. at 482).

With these authorities in mind, the undersigned considers whether Petitioner has an underlying, continuing liberty interest in being free from detention. After Petitioner was initially removed to Mexico pursuant to a stipulated order of removal in June 2009 and subsequently removed to Mexico a second time pursuant to a reinstatement of a prior order of removal in November 2009, Petitioner unlawfully entered the United States a third time before he was apprehended by immigration authorities in April 2024. *See* (Doc. 9 at 34). Petitioner's criminal history reflects that following his third reentry into the United States, he sustained convictions for second-degree burglary and for felony possession of a firearm on March 22, 2023, for which he

was sentenced to 364 days in jail for the burglary offense and 120 days in jail for the firearms offense. *Id.* Therefore, any such general liberty interest Petitioner may assert in freedom from detention is undermined by a number of factors.

First, Petitioner's liberty interests are "diminished by the fact that he is subject to an order of removal from the United States." *Singh*, 638 F.3d at 1208. Second, this is not a case where a petitioner accrued a liberty interest after an initial period of detention by immigration authorities followed by release, implicating the government's assessment that the petitioner was not a flight risk or danger to the community. Instead, Petitioner was brought into custody following his service of a term of imprisonment imposed for his March 22, 2023, convictions for possession of a firearm (120 days in jail) and second-degree burglary (364 days in jail), pursuant to a field operations worksheet ("FOW") generated and approved in 2024. *See* (Doc. 9 at 33). And third, Petitioner "presumably has an opportunity to challenge his inclusion in a mandatory detention category pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999)," but here, it does not appear from the record that he has pursued that avenue of relief.[3] *See Rivas Amaya v. Warden*, No. 1:26-cv-00884-DJC-SCR, 2026 WL 1651019, at *3 (E.D. Cal. June 8, 2026).

However, the undersigned acknowledges that Petitioner has been detained in immigration custody without a custody determination hearing for over 27 months since Petitioner was apprehended by immigration authorities on April 18, 2024—a significant amount of time longer than the six-month period deemed by the Supreme Court to be "presumptively reasonable" in the post-removal order context. *Zadvydas*, 533 U.S. at 701. In *Zadvydas*, the Court distinguished detention under § 1231 from detention under § 1226, noting that "post-removal-period detention, unlike detention pending a determination of removability, has no obvious termination point." *Id.* at 697. Here, removal is practically attainable. As the Supreme Court noted in *Jennings*,

---

[3] The remedy in a *Joseph* Hearing is a finding that a noncitizen is not subject to mandatory detention under § 1226(c). *See Joseph*, 22 I&N Dec. 799 at 804. Petitioner, however, does not challenge his detention under § 1226(c); instead, he asserts that his prolonged detention violates his right to procedural due process under the Fifth Amendment to the U.S. Constitution. *See* (Doc. 1 at 13). Therefore, because a *Joseph* Hearing would not provide Petitioner with the relief he seeks through his petition, the undersigned finds that Petitioner was not required to exhaust his administrative remedies by pursuing a *Joseph* Hearing before filing the instant petition.

"detention under 1226(c) has a definite termination point: the conclusion of removal proceedings." *Jennings*, 583 U.S. at 304. Therefore, Petitioner's detention, although prolonged, will terminate upon the conclusion of Petitioner's appellate proceedings pending before the Ninth Circuit. *See Prieto-Romero*, 534 F.3d at 1062 ("[Though petitioner's] detention lacks a certain end date, [] thus uncertainty alone does not render his detention indefinite in the sense the Supreme Court found constitutionally problematic in *Zadvydas*.").

The undersigned notes that some of that delay is due to Petitioner's decision to contest his removal, including through his appeal currently pending before the Ninth Circuit. *See Denmore*, 538 U.S. at 531 ("[Petitioner] was detained for somewhat longer than the average—spending six months in INS custody … [where petitioner] himself had requested a continuance of his removal hearing."); *see also Oladipupo v. Schmidt*, No. 23-CV-294, 2023 WL 3568498, at *6 (E.D. Wis. May 18, 2023) ("[T]he length of [petitioner's] detention is primarily attributable to the avenues for relief that he has pursued and his requests for extensions of time."). Indeed, Petitioner "is currently detained not because Mexico will not take him back, but because he still is litigating the order of removal from the United States." *Perez-Cortez v. Mayorkas*, No. 2:21-cv-00982-CDS-DJA, 2022 WL 1431833, at *3 (D. Nev. May 4, 2022) ("[D]etention under 1226(c) is mandatory, and [petitioner] is not being detained indefinitely.").

Although Petitioner's liberty interest appears diminished given the above considerations, the undersigned notes that Petitioner has not been afforded a custody redetermination since the time he was detained in April 2024. *See Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019) ("[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'") (citations omitted), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019). Where a noncitizen has been detained under section 1226(c) for a prolonged period without an individualized bond hearing, courts in this Circuit have considered whether such detention has become unreasonably prolonged such that due process requires a bond hearing under *Mathews*. *See, e.g., Escobar-Contreras v. Warden of the Golden State Annex Detention Facility*, No. 1:26-cv-00430-KES-SAB-

14

HC, 2026 WL 948390, at *5-6 (E.D. Cal. Apr. 8, 2026); *Lopez v. Warden of California City Detention Facility*, No. 1:26-cv-01525 CSK, 2026 WL 834573, at *4 (E.D. Cal. Mar. 26, 2026); *Hernandez v. Warden of the Golden State Annex Detention Facility*, No. 1:25-cv-01772-SAB-HC, 2026 WL 453517, at *4-5 (E.D. Cal. May 11, 2026).

Following these decisions, because Petitioner's significantly prolonged detention without a bond hearing (more than two years) raises due process concerns, the undersigned considers what process is due based on the following factors articulated in *Mathews*: "[(1)] the private interest that will be affected by the official action; [(2)] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [(3)] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *see Hernandez*, 872 F.3d at 993-94 (applying *Mathews* test in immigration detention context); *id.* at 993 ("The appropriateness of the requirement that ICE and IJs consider financial circumstances and alternative conditions of release is confirmed by the balance of factors under *Mathews*[.]").

As to the first factor, Petitioner has a clear interest in remaining free from detention. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha*, 504 U.S. at 80) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause."); *Hernandez*, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). While the undersigned "cannot simply count his months of detention and leave it at that[,]" *Rodriguez Diaz*, 53 F.4th at 1208, the undersigned "must also consider the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge" his removal proceedings. *Id.* Here, although Respondents assert that "DHS has determined that Petitioner presents a danger to the United States and is a flight risk[,]" (Doc. 9 at 2); *see id.* at 9 ¶ 14, the record does not indicate whether Petitioner has received any bond hearing since the commencement of his detention. The

undersigned notes that Petitioner was issued a notice of custody determination at the time he was detained on April 18, 2024, and he refused to sign the filing and chose not to indicate whether he requested a review of the custody determination by an immigration judge. *See* (Doc. 9 at 37). Separately, the record does not indicate whether Petitioner ever pursued a *Joseph* Hearing to challenge his detention under § 1226(c). But because Petitioner has been detained for a significant period of time without receiving any individualized bond hearing, and his order of removal is not yet final given the pending appeal before the Ninth Circuit, the undersigned finds that the first *Mathews* factor weighs in Petitioner's favor.

As to the second factor, the undersigned finds that notwithstanding Petitioner's refusal to indicate whether he would seek a custody determination, the risk of erroneous deprivation is high where Petitioner has not received any bond or custody determination hearing. *See Jimenez v. Wolf*, No. 19-cv-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. 2020); *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). "Thus, the probable value of additional procedural safeguards—a bond hearing—is high, because Respondents have provided virtually no procedural safeguards at all." *Id.* Therefore, this factor weighs in favor of granting a bond hearing. *See, e.g., Rivera Rodriguez v. Warden, California City Det. Facility*, No. 1:26-CV-01373-DC-SCR, 2026 WL 1536775, at *4 (E.D. Cal. June 1, 2026) (finding this factor weighed in favor of petitioner detained under 1226(c) due to a theft conviction).

Third, the undersigned recognizes that the government has a clear interest in detaining Petitioner to "'protect[] the public from dangerous criminal aliens.'" *Rodriguez Diaz*, 53 F.4th at 1208 (citation omitted); *see id.* ("The longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing an alien's ultimate removal."). However, the government's interest in detaining Petitioner without a bond hearing is "low." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025); *Ortega*, 415 F. Supp. 3d at 970. Custody determination hearings in immigration courts are routine and impose a "minimal cost." *Doe*, 787 F. Supp. 3d at 1094.

On balance, the undersigned finds that under *Mathews*, Petitioner is entitled to a bond hearing where he has been detained for over 27 months without receiving any individualized

16

custody determination and his appeal of a final order of removal to the Ninth Circuit remains pending. *See, e.g.*, *Jose G. M. L. v. Warden of the Golden State Annex Detention Facility, et al.*, No. 1:26-CV-0047-TLN-EFB, 2026 WL 472987, at *5 (E.D. Cal. Feb. 19, 2026) (ordering bond hearing where detention under § 1226(c) exceeded six months); *Lopez*, 2026 WL 834573, at *5 (ordering bond hearing where detention under § 1226(c) exceeded ten months); *Hernandez*, 2026 WL 453517, at *5 (same); *Escobar-Contreras*, 2026 WL 948390, at *6-7 (recommending the same in 1225(b) mandatory detention context), *report and recommendation adopted*, 2026 WL 976862 (E.D. Cal. Apr. 10, 2026).

### C. Remedy

For the foregoing reasons, the undersigned finds that a post-deprivation bond hearing is the appropriate remedy.

## V. Conclusion and Recommendation

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus (Doc. 1) be GRANTED.

2.  Respondents be ORDERED to provide Petitioner with a bond hearing within 14 days of the date of the order, at which Petitioner's eligibility for bond must be considered by a neutral decisionmaker such that continuing physical custody is legally justified.

3.  Respondents be DIRECTED to file a status report certifying compliance with the order within five (5) days of the bond hearing.

4.  The Clerk of the Court be DIRECTED to enter judgment in favor of Petitioner and close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within seven (7) days** after being served with these findings and recommendations, the parties may file written objections with the Court. Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given the nature of Petitioner's harm, the finding of a violation of the U.S. Constitution by Respondents, and the fact that the parties have extensively briefed the issues involved. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court

may require a response within a shorter period if exigencies of the calendar require."). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections, but a party may refer to exhibits in the record by CM/ECF document and page number. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).

A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **August 13, 2026**

UNITED STATES MAGISTRATE JUDGE